# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 373 | **DATE** | 9/2/2003 |
| **CASE TITLE** | USA vs. Jocelyn Jimenez | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendant's motion to suppress evidence (14-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 1 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 03 SEP 10 PM 3:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 03 CR 373 |
| ) | |
| JOCELYN JIMENEZ ) | |

**DOCKETED**
SEP 1 1 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jocelyn Jimenez provides income tax preparation and accounting services to individuals and small businesses from a storefront office on North Milwaukee Avenue in Chicago. On September 23, 1999, a Magistrate Judge of this Court issued a warrant authorizing a search of Jimenez's office for tax returns and documents relating to their preparation; calendars, appointment books, and other lists of clients and appointments; client files and records; information concerning the preparation of tax returns stored in electronic form; computers and related equipment; and software. The warrant stated that the search and any seizure was to be done "in a manner to minimize the disruption to Ms. Jimenez's business activities" and that to the extent possible, computer information was to be copied on site, any such information removed was to be returned within 3 business days, and copies of any documents seized were to be provided to Jimenez on request. Pursuant to the warrant, on September 29, 1999, agents from the Internal Revenue Service seized documents (mostly client files) and computer equipment, enough to file 57 boxes.

In April 2002, Jimenez was indicted for mail fraud in violation of 18 U.S.C. §1341, preparation of false tax returns in violation of 26 U.S.C. §7206(2), and obstructing the

21

administration of the IRS in violation of 26 U.S.C. §7212(a). The indictment alleges a multi-year scheme to defraud the IRS by preparing false income tax returns for at least 23 individuals. Jimenez has moved to suppress the evidence seized pursuant to the search warrant, arguing that the warrant was far broader than the showing of probable cause made in the warrant application, and that the warrant lacked sufficient particularity.

The warrant application included an affidavit from IRS Agent Brian Hoffman, who stated that in December 1997, he received information from IRS Agent Janet Hughes, who reported allegations that Jimenez was inflating her clients' itemized deductions and child care credits. This information included an affidavit from one of Jimenez's clients obtained during an audit of his 1994 tax return. The client asserted that in 1996, Jimenez had prepared his 1995 tax return and amended 1993 and 1994 returns and had included child care credits to which he was not entitled, and other false information, without his knowledge and without asking him for any supporting information.

Hoffman also stated that he had reviewed statistics regarding returns prepared by Jimenez for 1995, 1996, and 1997. For each of those years, he said, more than 90% of the returns had resulted in refunds, which he characterized as "unusually high" based on the IRS's experience. He said he had reviewed 115 particular returns for 1997, and that these included a "pattern of deductions" for unreimbursed employee business expenses, which he characterized as consistent with the allegations against Jimenez concerning inflated deductions. Fifty-three of those returns, Hoffman said, claimed a child care credit.

Hoffman also recounted two meetings between Jimenez and an undercover IRS agent wearing a recording device. He stated that on March 26, 1998, the undercover agent visited

Jimenez's office after making an appointment to prepare a 1997 tax return. She provided Jimenez with information that ought to have resulted in a tax due of $325, but Jimenez, using her computer, prepared a return reflecting a $1,351 refund. Jimenez accomplished this by including fabricated deductions for medical expenses, charitable contributions, employee business expenses, and child care, totaling $9,475. The undercover agent had given Jimenez no information supporting such deductions and had told Jimenez she had no such information. Jimenez told the agent that she could remove the child care credit from the return if the agent didn't want it, stating, "I'm like a crook, huh?" The agent replied that she did not understand but that Jimenez should do whatever was best. Jimenez said the agent could just give the child care tax credit back if it was disallowed, stating, "What's life without chances. Right? If there's any problems, call me."

The undercover agent returned to Jimenez's office in late March 1999 for the preparation of a 1998 tax return. Jimenez retrieved the agent's client file from a file cabinet and asked if anything had changed since the previous year. The agent replied no. Jimenez asked the agent to go get her (Jimenez) some coffee. When the agent returned, Jimenez had prepared a tax return showing use of the standard deduction rather than the itemized deductions used the previous year, and a false child care credit of $640. When the agent questioned the credit, Jimenez said she was entitled to it because her children were under thirteen years old. In his affidavit, Hoffman stated that this is true only if the taxpayer incurs child care expenses; he noted that the agent had told Jimenez that she took care of her children herself. When the agent asked Jimenez about the name of the child care provider she had listed on the agent's tax return, Jimenez said that it was "just a company I do taxes for." When the agent asked if she would get in trouble for

3

claiming the credit, Jimenez replied, "No. You didn't last year."

Hoffman also represented that under the law, paid tax preparers like Jimenez are required to keep copies of prepared tax returns and related documents for three years.

Based on this information, Hoffman asserted that there was probable cause to believe that Jimenez had prepared false tax returns and that information about the returns and the identity of the taxpayers for whom they were prepared was located in her office. The Magistrate Judge issued the warrant on September 23, 1999.

When the IRS agents executed the warrant on September 29, 1999, they seized Jimenez's computer, numerous computer disks, and related equipment; all of her client files; her own income tax returns and work papers for several years; bank records; appointment books; her Rolodex file; a number of lottery tickets; and other documents. Jimenez argues that the warrant effectively authorized, and was used to conduct, an improper general search of her workplace. She also contends that the warrant application did not justify a warrant of that breadth.

The Fourth Amendment's Warrant Clause prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The purpose of the particularity requirement is to prevent general searches. *E.g., Maryland v. Garrison,* 480 U.S. 79, 84 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

A warrant that broadly authorizes law enforcement officers to seize "evidence of crime" is a prohibited general warrant. *See, e.g., United States v. Stefonek,* 179 F.3d 1030, 1032-33 (7th

Cir. 1999). The same may be true of warrants that authorize, without further specification, the seizure of evidence of violation of a broadly-worded statute such as the general conspiracy statute or the general tax evasion statutes. *See Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir. 1987); *Voss v. Bergsgaard,* 774 F.2d 402, 405 (10th Cir. 1985); *United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir. 1982). But that is not what this warrant did. Rather, as noted earlier, the warrant listed with particularity, seven categories of documents and things that could be seized.

One of the categories of documents listed in the warrant made reference to 26 U.S.C. §7206(2), which makes it illegal to assist in preparing a false tax return:

> b. Documents relating to the preparation of false and fraudulent income tax returns, Schedules, U.S. Treasury checks which constitute the fruits, instrumentalities and evidence of violation of federal statutes which relate to income tax filing and fraud, including Title 26, United States Code, Section 7206(2), which have been committed and are being committed by Jimenez Financial Services and others unknown to me at this time.

But this description did not leave it to the IRS agents' whim to determine what might be "evidence of violation" of §7206(2). Rather, it directed them to seize particular types of documents – those relating to the preparation of false tax returns, and checks from the government that might constitute the fruits of a violation of the statute. It was specific enough to enable the agents executing the warrant to identify with reasonable certainty the things to be seized. *See United States v. Sleet,* 54 F.3d 303, 307 n.1 (7th Cir. 1995); *see also, United States v. Vitek,* 144 F.3d 476, 481 (7th Cir. 1998).

Jimenez also argues that the warrant authorized the seizure of evidence that went far beyond the showing of probable cause contained in the warrant application. "When the probable cause covers fewer documents in a system of files, the warrant must be more confined and tell

the officers how to separate the documents to be seized from others." *United States v. Bentley*, 825 F.2d 1104, 1110 (7th Cir. 1987) (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)). *See also Rickert*, 813 F.2d at 909 ("All business records may be seized [pursuant to a broadly-worded warrant] if probable cause exists to believe that the entire enterprise has engaged in a pervasive scheme to defraud the IRS.")

According to Jimenez, the warrant application disclosed potential violations of the law regarding just two clients: the former client interviewed by the IRS regarding his dealings with Jimenez in 1996, and the undercover agent who met with her in March 1998 and March 1999. This evidence, Jimenez argues, did not amount to a showing of probable cause to believe that she was engaged in pervasive fraud that extended to the tax returns of other clients. Jimenez discounts the statistical evidence cited by Agent Hoffman in the affidavit. She argues that without further explanation, the fact that a large proportion of her clients received tax refunds, and that many of them claimed child care credits and employee business expenses, indicates only that her clientele tended to be people of modest means, not that she had engaged in a pattern of preparing false returns.

The Court agrees with Jimenez that the statistical evidence cited by Hoffman, standing along, does not necessarily point in the direction of fraud. And under ordinary circumstances the fact that a person has engaged in two distinct fraudulent transactions would be insufficient to establish probable cause to believe that she was engaged in a pervasive fraud. But what is significant in this case are the inferences reasonably drawn from the accounts of Jimenez's former client and the undercover agent. The former client's statements tended to show that Jiminez was willing to create deductions out of whole cloth without even bothering to discuss

6

them with the client. The undercover agent's account of her two encounters with Jimenez indicated that Jimenez was willing to initiate a criminal scheme to defraud the Internal Revenue Service by enlisting a complete stranger as a co-participant in the preparation of a fraudulent tax return. The fact that she had done this so readily for a person she had never before encountered, combined with the evidence of a pattern of similar deductions for other clients, provided a reasonable basis to believe that she was regularly and pervasively using her business to defraud the IRS. For this reason, the application made a showing of probable cause sufficient to justify a warrant that effectively permitted the seizure of all records relating to Jimenez's preparation of tax returns.

Finally, the list of items to be seized did not exceed what was reasonably calculated to constitute evidence of the preparation of false tax returns. It was reasonable to believe that such evidence would be found in client files, which likely would reflect, among other things, information contradicting claimed deductions or the absence of information supporting deductions; Jimenez's computers, which she used to prepare returns; and her calendars and appointment books, which could reveal when she met with the clients for whom she prepared returns. The lottery tickets were properly seized because they might support claims of gambling winnings or losses on Jimenez's own tax returns.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to suppress evidence

[docket #14-1].

Date: September 2, 2003

*signature*
MATTHEW F. KENNELLY
United States District Judge